UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALICIA J. BENSON,<br><br>                Plaintiff,<br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | CASE NO. 2:24-cv-00908-LK<br><br>ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS |

This matter comes before the Court on Plaintiff Alicia Benson's appeal for review of the Commissioner of the Social Security Administration's denial of her application for supplemental security income and social security disability insurance benefits. Dkt. No. 3. For the reasons explained below, the Court agrees with Benson that the ALJ erred and remands this case for additional administrative proceedings.

**I. BACKGROUND**

Plaintiff Alicia Benson is in her mid-40s, has a high school education (and one year of college), and worked as a dental hygienist for most of her professional career. AR 32, 263–64.

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 1

In February 2021, she applied for social security disability insurance benefits ("SSDI") and supplemental security income ("SSI"). AR 231–37, 238–44. In both applications, she alleges disability as of October 14, 2020. AR 231, 238. Her claims were denied both initially and on reconsideration. AR 117–21 (initial denial in July 2021); AR 130–37 (denial on reconsideration in May 2022). Administrative Law Judge ("ALJ") Cecilia LaCara held a telephonic hearing on May 12, 2023. AR 199 (notice of hearing), AR 39–64 (hearing transcript). In a July 19, 2023 decision, the ALJ ultimately concluded that Benson was not disabled within the meaning of the Social Security Act. AR 21–33. Benson now seeks this Court's review of that determination.

## II. THE ALJ'S DECISION

Under the Social Security Act, courts use a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). Here, the ALJ found the following:

- **Step One – Whether Claimant is Engaged in Substantial Gainful Activity.** Benson met this element because she had not engaged in substantial gainful activity since October 14, 2020—the alleged onset date of her disability. AR 23.

- **Step Two – Whether Claimant has a Medically Determinable Impairment That is "Severe" or a Combination of Impairments That Are "Severe."** Benson met this element because she has the following severe impairments: depressive disorder; anxiety disorder; posttraumatic stress disorder; and obesity. AR 23.

- **Step Three – Whether Claimant's Impairment or Combination of Impairments is of a Severity to Meet or Medically Equal the Criteria of An Impairment Listed in 20 CFR Part 404, Subpart P, Appendix 1.** Benson did not have a qualifying impairment (or combination of impairments). AR 24. The ALJ determined that Benson's mental impairments did not result in "one extreme limitation or two marked limitations in a broad area of functioning" and that she had more than a "minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." AR 24–25. The ALJ also noted that "it is possible" that Benson's physical impairments, including her obesity, "exacerbate another impairment to the degree that that impairment meets or medically equals a listing," but that there was "insufficient evidence" to conclude this was the case. AR 24.

- **Residual Functional Capacity.** Benson "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she can

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 2

occasionally climb ramps, stairs, ladders, ropes, or scaffolds; she can occasionally stoop and crawl; she can frequently kneel; she must avoid concentrated exposure to hazards; and work is limited to occasional superficial interaction with the public and occasional changes in the work setting." AR 25.

- **Step Four – Whether Claimant Has the Residual Functional Capacity to Perform the Requirements of Her Past Relevant Work.** Benson's residual functional capacity precluded her from continuing to perform her past work as a dental assistant. AR 32.

- **Step Five – Whether Claimant is Able to Do Any Other Work Considering Her Residual Functional Capacity, Age, Education, and Work Experience.** Given Benson's age, residual functional capacity, education, and work experience, there are a significant number of jobs in the national economy that she could perform. AR 32.

Based on the above analysis, the ALJ concluded that Benson was not disabled, and as a result, denied her claims for SSDI and SSI. AR 33. The Appeals Council denied her administrative appeal, making the ALJ's decision the Commissioner's final decision. AR 5–7.

### III.  DISCUSSION

Benson contends that the ALJ erred by improperly rejecting her subjective symptom testimony and by failing to properly evaluate the medical opinion of one her treating physicians, Dr. Justin Stamschror. Dkt. No. 15 at 1. She asks this Court to remand the case for an immediate payment of benefits, or in the alternative, for additional administrative proceedings. *Id.* For the reasons explained below, the Court agrees in part that the ALJ erred and remands this case for additional administrative proceedings.

**A.   Legal Standard**

This Court may set aside the Commissioner's denial of SSDI and SSI benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation modified). The Court "must consider the entire record as a whole, weighing

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 3

both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted). The ALJ is nonetheless responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). This means that the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Winans v. Bowen*, 853 F.2d 643, 644–45 (9th Cir. 1987). When the evidence is susceptible to more than one rational interpretation, the ALJ's interpretation must be upheld. *Ford*, 950 F.3d at 1154. Finally, the Court will not reverse an ALJ's decision on account of harmless error, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation modified).

**B.    The ALJ Did Not Improperly Discount Dr. Stamschror's Opinion**

Benson argues that the ALJ improperly rejected Dr. Justin Stamschror, M.D.'s opinions on her mental limitations, and that error "caused harm and an inaccurate [residual functional capacity] assessment," which currently does not reflect "limitations in [Benson's] interactions with coworkers or supervisors nor the ability to maintain proper work attendance." Dkt. No. 15 at 4.[1]

    1.    Legal Standard

Because Ms. Benson filed her application for benefits after March 27, 2017, the ALJ was required to consider the persuasiveness of Dr. Stamschror's medical opinion using five factors: supportability, consistency, relationship with claimant, specialization, and "other factors." *See* 20 C.F.R. § 416.920c(c); *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022).[2] The most

---

[1] The ALJ discounted other medical opinions (AR 29–31), but Benson does not contend that those analyses were the product of legal error.

[2] "Other factors" refers to anything that "tend[s] to support or contradict a medical opinion," and includes, but is not

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 4

important of these factors are supportability and consistency, and the ALJ is required to explain her application of those two factors; she "may, but [is] not required to," explain her consideration of the remaining three (relationship with claimant, specialization, and other). 20 C.F.R. § 416.920c(b)(2). "Supportability" is the extent to which a medical source grounds the opinion in an explanation of the relevant objective medical evidence. *Woods*, 32 F.4th at 791–92. "Consistency" is the extent to which the opinion accords with evidence from other medical and nonmedical sources. *Id.* at 792. Under the 2017 regulations, an ALJ no longer needs to give special deference to treating physicians, nor provide "specific and legitimate reasons" for rejecting their opinion. *Id.* Instead, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787. And as noted above, "substantial evidence" is not a high bar; it means only "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison*, 759 F.3d at 1009 (citation omitted).

    2. <u>Dr. Stamschror's Findings</u>

Dr. Stamschror psychiatrically evaluated Benson (via telehealth) in March 2022 and diagnosed her with post-traumatic stress disorder, panic disorder with agoraphobia, and an unspecified mood disorder. AR 452, 455. Dr. Stamschror made various findings based on those diagnoses, two of which are at issue here:

- Benson's "ability to maintain regular attendance in the workplace and complete a normal workday without interruptions is likely impaired based on [her] reported agoraphobia[.]" AR 455 ("work attendance finding").

- Benson's "ability to interact with coworkers and superiors and the public and adapt to the usual stresses encountered in the workplace is impaired based on [her] interpersonal presentation." *Id.* ("social interaction finding").

The findings were based on the "information available today," which was limited to the mental

---

limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(5).

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 5

status exam itself and a June 2021 function report. AR 452, 455.

As discussed below, the ALJ did not consider those findings persuasive because they were based primarily on Benson's self-report (which the ALJ did not find entirely credible) and were inconsistent with the longitudinal record, most of which Dr. Stamschror was not able to review. AR 31–32.

### 3. The ALJ Did Not "Cherry-Pick" Evidence in the Record

In discounting Dr. Stamschror's work attendance and social interaction findings, the ALJ weighed those findings against

> the longitudinal record showing that [Benson] is able to interact appropriately with providers, who describe her as pleasant; mental status examination findings suggesting intact cognition with intact memory and concentration; her largely unremarkable mental presentation with normal mental status findings during physical appointments; formal mental status testing conducted by Dr. Stamsch[r]or himself suggesting no more than minor memory and concentration deficits; . . . and her frequently benign presentation with full alertness and orientation[.]

AR 31–32. The ALJ found that this record was inconsistent with "the severity or frequency of [Benson's] reported mental symptoms" and suggested "greater mental functional capacity than alleged." *Id.* at 32.

Benson disagrees with the ALJ's interpretation of the record and argues that the ALJ "cherry-pick[ed] isolated instances of favorable psychological symptoms when the record as a whole reflects longstanding psychological disability." Dkt. No. 15 at 15. The Commissioner agrees that "an ALJ may not cherry pick from mixed results to support a denial of benefits," but argues that the ALJ may "choose examples that are indicative of a broader development." Dkt. No. 19 at 12 n.5 (citing *Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016)).

The Court is persuaded that the ALJ adequately considered the record as a whole—both normal and abnormal physical and mental findings. For example, the ALJ noted the following mental abnormalities:

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 6

- "The claimant also has depressive disorder; anxiety disorder; and posttraumatic stress disorder with reported symptoms to include anxiety with panic attacks; agoraphobia; depression; and difficulty interacting and trusting others (see e.g. 10F; 14F16, 20)." *Id.*

- "The claimant has been noted to have an anxious affect; mental health providers have described the claimant as stressed and tired; and she was noted to have slowed speech when seen in June 2022 (see e.g. 7F3; 10F; 14F7, 19, 23, 61, 65, 73, 115, 121)." AR 28.

- "When seen in November 2021, she had largely normal psychiatric findings with guarded but engaged behavior; a flat but appropriate affect with depressed mood . . . (7F3)." *Id.*

- "When examined in November 2022 . . . she had an anxious and hopeless presentation . . . (12F3)." *Id.*

As shown above, this is simply not a case where the ALJ cited only to portions of the record that support her opinion. To be sure, Benson highlights parts of the record that the ALJ did not expressly discuss, Dkt. No. 15 at 15, but the ALJ is not required to discuss every piece of evidence in the record when reaching her conclusions, *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not . . . require ALJs to draft dissertations when denying benefits."). For that reason, the Court disagrees with Benson that the ALJ's decision "do[es] not paint a full picture of [Benson's] mental health over the course of the relevant period." Dkt. No. 15 at 15.

    4. <u>The ALJ's Conclusion that Dr. Stamschror's Opinions are Inconsistent with Benson's Longitudinal Record is Supported by Substantial Evidence, and Any Error in Rejecting the Opinions is Harmless</u>

The Court finds that the ALJ's assessment is supported by substantial evidence. There is more than a "mere scintilla" of evidence supporting the ALJ's conclusion that Dr. Stamschror's work attendance and social interaction findings are undermined by the longitudinal record. As the ALJ observed, Benson has demonstrated an ability to complete basic activities of daily living, including by attending "routine appointments" during where she "interact[s] appropriately with providers and examiners, who describe her as pleasant or cooperative." AR 24–26, 31. The ALJ also noted that the longitudinal record showed mental status examinations "suggesting intact cognition with intact memory and concentration"; "largely unremarkable mental presentation with

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 7

normal mental status findings during physical appointments"; and "frequently benign presentation with full alertness and orientation[.]" AR 31–32 (citing, among other things, 1F5 (AR 344), noting as follows: "Neurologic: Alert & oriented x 3, Normal motor function, Normal sensory function, No focal deficits noted"; 2F10 (AR 356), noting as follows "Psych: normal mood and affect"; 2F16 (AR 362), noting as follows: "General: pleasant in no acute distress"; 7F3 (AR 407), noting as follows: "Psychiatric Exam: General Appearance: alert and well-groomed. Behavior: appears engaged and guarded. Mood: depressed. Affect: appropriate and flat. Thought Processes: associations are logical, attention span is normal throughout interview, and concentration intact. Thought Content: no delusions, obsessions, hallucinations, suicidal ideation, or homicidal ideation and normal thought content."; 12F3 (AR 467), noting as follows: "Psychiatric Normal Orientation - Oriented to time, place, person & situation. Not forgetful."; 14F15 (AR 512), noting that speech and thought process were organized, short and long term memory were age appropriate, and reasoning and judgment were age appropriate). Additionally, "she is able to prepare meals; complete housework; and drive a car," and has maintained "appropriate or otherwise unremarkable hygiene and grooming[.]" AR 25–26; *see also* AR 32 (citing, among other things, 10F (AR 452–57)); *cf. J.P. v. Saul*, No. 20-CV-08253-LB, 2021 WL 6197319, at *3 (N.D. Cal. Dec. 30, 2021) (finding that ALJ erred in discounting medical opinions and testimony; record showed that plaintiff "did not leave the house" because of his agoraphobia and his mother would drive him to some medical appointments "because he suffered from panic attacks while driving on the freeway"). As Benson relayed to Dr. Stamschror, her activities of daily living include getting up at 8:00 a.m., going to the park with her son, going grocery shopping (including obtaining items at the food bank), driving if she has to go somewhere, and going to bed around 10:30 p.m. AR 454. She drives around town to pay bills, AR 603, 611, drops off and picks up her son from school, AR 55–56, does light housework, prepares meals, cleans the kitchen, and does laundry, AR 56.

As noted above, this Court's role is only to look at whether the ALJ's decision is supported by more than a "mere scintilla" of evidence and whether a reasonable person could accept that evidence as adequately supporting the ALJ's conclusion. The ALJ's decision here meets this bar. Even if the record evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must still be upheld. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *compare Liburd v. Comm'r of Soc. Sec. Admin.*, No. 21-35435, 2022 WL 1616975, at *1 (9th Cir. May 23, 2022) (reversing ALJ's decision to discount a medical opinion as unsupported by substantial evidence where "*all* the ALJ's reasons for rejecting opinion [were] contradicted by the record." (emphasis added)).

Finally, any error in rejecting Dr. Stamschror's opinions was harmless. He opined that Benson's "psychiatric diagnoses are likely treatable with medication management and psychotherapy" such that her "prognosis is fair, and [her] condition will likely improve in the next twelve months assuming optimal treatment." AR 455 ("I believe that if the claimant received optimal care, the likelihood their symptoms would improve over the next 12 months is fair."). Because his opinions did not address whether Benson had functional limitations that lasted for 12 months or longer, the assessed limitations do not meet the Social Security Administration's duration requirement. *See Daniel v. Kijakazi*, No. 1:22-cv-01094-BAM, 2023 WL 5956813, at *8 (E.D. Cal. Sept. 13, 2023) ("Because the limitation did not meet the twelve-month duration requirement, [any] error in addressing the limitation is nonprejudicial and therefore harmless error."); *Salvas v. Berryhill*, No. CV 16-06956-JEM, 2017 WL 3731994, at *4 (C.D. Cal. Aug. 28, 2017) (because limitations did not meet the durational requirement, they are not probative, and "[a]ny failure to give reasons for not adopting these limitations is harmless error"); 20 C.F.R. § 416.920(a)(4)(ii) ("If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments

that is severe and meets the duration requirement, we will find that you are not disabled."); 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").

### C.  The ALJ Erred in Discounting Benson's Subjective Symptom Testimony

Benson next argues that the ALJ improperly rejected her subjective symptom testimony. Dkt. No. 15 at 7. To determine whether a claimant's subjective symptom testimony is credible, the ALJ must engage in a two-step analysis: "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison*, 759 F.3d at 1014 (citation modified). In this analysis, the claimant is "not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (citation modified). Further, the claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.* (citation modified). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (citation modified). Although an ALJ cannot reject subjective symptom testimony solely because objective medical evidence does not fully substantiate it, she can discount that symptom testimony if the record—including normal findings or inconsistencies—undermines its credibility. *See Smartt v. Kijakazi*, 53 F.4th 489, 497–98 (9th Cir. 2022). "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024).

As the ALJ acknowledged, Benson presented medical evidence establishing that she had "the following severe impairments: depressive disorder; anxiety disorder; posttraumatic stress disorder; and obesity" as well as other "physical impairments . . . including neck and back strains with facet arthropathy and mild degenerative changes in her cervical spine." AR 23–24. The ALJ did not note any evidence of malingering, so the clear and convincing standard applies here.

1. <u>The ALJ's Evaluation of Benson's Testimony About Her Physical Impairments is Deficient</u>

The ALJ acknowledged that Benson's "medically determinable impairments" (e.g., back injuries, sleep apnea) could cause her symptoms, but found that her statements of the symptoms' severity and limiting effects were "not entirely consistent" with the record. AR 26. Benson argues that the ALJ (1) may not reject Benson's subjective testimony "merely because objective medical evidence does not support the degree of pain that [she] describes"; (2) "fail[ed] to explain why certain findings, such as the benign and normal musculoskeletal results cited, outweigh other record notes that were acknowledged but not cited in the decision, such as spinal tenderness and reduced range of motion"; and (3) did not clearly tie specific self-reported symptoms (e.g., "difficulty walking" or "limited mobility") to contradictory evidence in the record. Dkt. No. 15 at 11–12. For ease of reference, the Court reproduces below the ALJ's recitation of Benson's self-reported symptoms along with the ALJ's discussion of contradictory evidence in the record.

- **Benson's self-reported physical symptoms:** "The claimant alleges that she is unable to work due to symptoms and limitations such as back injuries to include back injuries from a car accident; sleep apnea; and anxiety (1E [(AR 262–68)])." AR 26. "In connection with her application, she alleges pain with activities; difficulties with activities of daily living; being easily overwhelmed with anxiety; difficulty with stress and changes in routine; and that her conditions affect her memory, concentration, understanding, and ability to complete tasks and follow instructions (3E [(AR 272–89)]; 4E [(AR 290–99)])." *Id.* And she testified that "she is unable to work due to residual symptoms and limitations following a motor vehicle accident such as limited mobility with foot and back pain; pinched nerve; difficulty sleeping; difficulty getting out of bed; and difficulty with activities of daily living." *Id*. The ALJ found that Benson's "medically determinable impairments could reasonably be expected to cause

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 11

the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

- **ALJ's findings regarding physical symptoms based on <u>physical examinations</u>:** The ALJ found that although (1) "[Benson] alleges chronic pain with severely limited physical functioning," (2) she "has been obese during the period at issue (see e.g. 2F8 [(AR 354)]; 7F1 [(AR 405)]; 12F3 [(AR 467)])," (3) "[t]reatment notes describe reports of increased back pain following an October 2020 motor vehicle accident with reported limited walking capacity; chronic pain; and fatigue with reduced energy; and chronic pain (see e.g. 2F6 [(AR 352; *see also* AR 351 (2/3/2021 physical therapy plan of care noting that Benson's back pain and decreased core and gluteal activation affects her ability to walk)]; 14F33 [(AR 530)], 14F42 [(AR 539)])," and (4) "she has had intermittent abnormal findings on physical examination such as spinal tenderness with a reduced range of motion with chiropractic records further noting musculoskeletal pain with a limited range of motion (see e.g. 2F6 [(AR 352)]; 7F3 [(AR 407)]; 8F [(AR 432–50)]; 12F3 [(AR 467)]; 13F [(AR 471–97)]), the severity and frequency of her reported symptoms and limitations are not corroborated by findings and observations during physical examinations." AR 26. The ALJ provided the following evidence, concluding that it did not corroborate "the severity or frequency of [Benson's] reported symptoms and limitations and suggest greater functional capacity than alleged." AR 27.

    o "When examined in November 2019, she was alert and attentive with no distress; she had normal lungs; she had normal musculoskeletal findings with normal motor strength and tone, normal joints, and normal movement of her extremities; and a normal gait and station (2F19 [(AR 365, an encounter on November 13, 2019 during which Benson was "well-appearing," "active and alert," "attentive," and "in no acute distress." She was also noted to have "normal gait and station," normal strength and tone, normal joints, bones, and muscles, and "normal movement of all extremities.")])." AR 26–27.

    o "When examined in October 2020 following a motor vehicle accident, she was alert, oriented, and in no distress; she had normal cardiovascular and pulmonary findings; she had a good range of motion in her musculoskeletal system with no back tenderness; and she had normal motor and sensory function (1F5 [(AR 344)])." AR 27.

    o "When seen later in October 2020, she had lumbar tenderness with a limited range of motion, although she was also noted to be pleasant and in no distress with normal heart and lungs (2F16 [(AR 362)])." *Id.*

    o "When examined in January 2021, she was active and alert with no acute distress with an otherwise unremarkable physical presentation (7F16 [(AR 420)])." *Id.*

    o "When seen in March 2021, she was pleasant and in no distress with a normal mood and affect; she had normal heart and lung findings; and she had an otherwise unremarkable physical presentation (7F14 [(AR 418)]). *Id.*

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 12

- o "On examination in November 2021, she had spinal tenderness with spasms and a reduced range of motion (7F3 [(AR 407)])." *Id.*

- o "When examined in November 2022, she reported that she had significant difficulty walking since her 2020 motor vehicle accident and had lumbar tenderness and pain with motion (12F3 [(AR 467)])." *Id.*

- **ALJ's findings regarding physical symptoms based on <u>imaging</u>:** "The severity and frequency of her alleged symptoms and limitations is likewise not corroborated by workup." AR 27. The ALJ provides the following examples, concluding that this workup "does not corroborate the severity or frequency of her reported symptoms and limitations":

  - o "[W]hile October 2020 imaging showed some facet arthropathy in her lumbar spine, imaging in October 2020 was also described as normal (2F10 [(AR 356)], 44 [(AR 390)]; 7F23 [(AR 427; *see also* AR 426)]); December 2017 imaging showed only mild degenerative changes in her cervical spine (2F47 [(AR 393, dated December 18, 2017)]); and December 2017 imaging showed a normal thoracic spine (2F50 [(AR 396, dated December 18, 2017)])." *Id.*

As shown above, the ALJ did not fail to clearly tie specific self-reported symptoms to contradictory evidence in the record. However, the Court agrees with Benson that the ALJ did fail to explain why the evidence above outweighs other record notes—especially those from her chiropractor's office and physical therapist's office, and especially those following Benson's October 2020 motor vehicle accident. Simply calling treatment notes regarding pain and other symptoms "intermittent" without weighing their frequency or impact—or the potential changes caused by the October 2020 accident—is not enough to meet the "clear and convincing" standard. *See, e.g., P.E. v. Saul*, 445 F. Supp. 3d 306, 333 (N.D. Cal. 2020) (because "the term 'intermittently' sheds no light on the frequency of [claimant's] pain flares," "the ALJ's reason for rejecting [claimant's] testimony about the portion of his day in which he is in pain is not a clear and convincing reason for rejecting that testimony and it is not based on substantial evidence"). "While the ALJ is not required to reconcile every shred of evidence, the ALJ must acknowledge relevant evidence and *explain* [her] rejection of such evidence." *Tonya B. o/b/o A.M.C. v. Comm'r*

*of Soc. Sec.*, No. 5:21-CV-00787, 2022 WL 4616971, at *4 (N.D.N.Y. Sept. 30, 2022) (citation modified, emphasis added). The ALJ did not do that here.

The Court notes that the record evidence not listed above is not necessarily inconsistent with the ALJ's position. For example, the following parts of the record suggest that Benson's prognosis is good or fair based on her physical presentation, but her unwillingness to follow through with her providers' recommendations (in both the physical and mental health arenas) prevents improvement:

- AR 351: 2/3/2021 physical therapy plan of care noting that Benson's back pain and decreased core and gluteal activation affects her ability to walk but that her "[e]motional and mental distress for several months affect [her] ability to complete exercises."

- AR 539: 7/14/2022 mental health encounter stating that Benson "is always stressed but has difficulty making changes in her life and utilizing stress reduction techniques due to 'this is just how I am.'" *See also, e.g.*, AR 538 ("The clinician encouraged [Benson] to have organized set places to keep her belongings so she knows where they are but [Benson] shared 'I'm scatterbrained and not that organized and that's just the way I am.'").

- AR 570: 10/27/2022 mental health encounter noting that Benson is "unwilling[] to act in ways that overcome life challenges."

- AR 439: 9/22/2021 encounter with chiropractor: "Due to transportation issues, the patient is not able to come in as much as required. States that she feels better after the adjustments though as not as stiff/sore anymore."

- AR 440: 10/20/2021 encounter with chiropractor: "Patient improving. After the treatments feels better but due to stress, posture, the pain returns."

- AR 441: 10/27/2021 encounter with chiropractor: "Prog[nosis] is fair. Due to lack of finances and child care, she cannot afford the time to get physical therapy or massage therapy."

- AR 443: 11/10/2021 encounter with chiropractor: noting that "Prog[nosis] is good," but "[d]ue to childcare issues, [Benson] is not able to come in for treatments regularly or start physical therapy," and "[she] requires psychological therapy."

- AR 445: 12/8/2021 encounter with chiropractor noting she is "[b]etter after the adjustments" and "[p]rog[nosis] is good."

- AR 446: 12/22/2021 encounter with chiropractor noting that Benson "[s]tates that after the adjustments, she feels improvement," but she is "very busy with her son, no daycare and unable to make her appts."

- AR 447–48: 1/12/2022 encounter with chiropractor noting that Benson "states that the adjustments help her a lot [sic]" and her "[p]rog[nosis] is good."

- AR 449: 1/26/2022 encounter with chiropractor noting that Benson is "[b]etter with treatments in our clinic, worse with taking care of her child and prolonged standing."

On remand, the ALJ must explain why the evidence aligned with her conclusion outweighs any contradictory evidence in the record. The ALJ must also address whether Benson has followed the treatment prescribed by her medical sources, and if not, whether there was a good reason for this failure. 20 C.F.R. § 404.1530.

2. The ALJ's Evaluation of Benson's Testimony About Her Mental Impairments is Deficient

Next, the ALJ acknowledges that Benson's mental impairments such as her anxiety could cause her symptoms, but found that the "severity and frequency" of her symptoms as she describes them is "not corroborated" by the record. AR 27–29. Benson again complains that the ALJ did not clearly tie specific self-reported symptoms to contradictory evidence in the record. Dkt. No. 15 at 14. Benson argues that the ALJ cannot cherry-pick isolated instances of favorable psychological symptoms or rely on mental status exam notes by themselves. *Id.* at 14–15. Here too the Court reproduces below the ALJ's recitation of Benson's self-reported symptoms along with the ALJ's citation of contradictory evidence in the record.

- **Benson's self-reported mental symptoms:** "The claimant also has depressive disorder; anxiety disorder; and posttraumatic stress disorder with reported symptoms to include anxiety with panic attacks; agoraphobia; depression; and difficulty interacting and trusting others (see e.g. 10F [(AR 452–57, Dr. Stamschror's opinion)]; 14F16 [(AR 513)], 20 [(AR 517)]." AR 27. Benson "has been noted to have an anxious affect; mental health providers have described the claimant as stressed and tired; and she was noted to have slowed speech when seen in June 2022 (see e.g. 7F3 [(AR 407)]; 10F [(AR 452–57, Dr. Stamschror's opinion)]; 14F7 [(AR 507; this is not a provider assessment but rather responses to form questions by Benson; the Court notes that Benson states that she is not taking any medication to treat her mental health

symptoms)], 19 [(AR 516)], 23 [(AR 520)], 61 [(AR 558)], 65 [(AR 562)], 73 [(AR 570; noting that Benson is "unwilling[] to act in ways that overcome life challenges")], 115 [(AR 612)], 121 [(AR 618)])." AR 28.

- **ALJ's findings regarding mental symptoms.** Although the ALJ acknowledged that "the record suggests social deficits," she found that "the severity and frequency of [Benson's] reported allegations is not corroborated by the longitudinal record," or "by mental status findings during physical appointments," *id.*, and provided the following examples, which the ALJ described as "suggest[ing] that [Benson] is able to interact appropriately with providers, who describe her as pleasant; that she has intact cognition with intact short and long-term memory and intact attention and concentration; and that she has appropriate or otherwise unremarkable hygiene," and "suggest greater functional capacity than alleged," *id.*:

  o "[O]n mental status examination in May 2022, while she was anxious, she was cooperative; she was oriented; her thought process and speech were organized; she had appropriate short and long-term memory; she had intact reasoning and judgment; and she had appropriate intellectual functioning (14F15 [(AR 512)])." *Id.*

  o "When seen in October 2020 following her motor vehicle accident, she was alert, oriented, and pleasant (1F5 [(AR 344), noting as follows: "Neurologic: Alert & oriented x 3, Normal motor function, Normal sensory function, No focal deficits noted"]; 2F16 [(AR 362), noting as follows: "General: pleasant in no acute distress"]." *Id.*

  o "When examined in January 2021, she was active and alert with no acute distress; she was attentive; she was cooperative; she was not depressed or anxious; and she had intact insight and judgment (7F16 [(AR 420)])." *Id.*

  o "When seen in March 2021, she was pleasant with a normal mood and affect (7F14 [(AR 418)])." *Id.*

  o "When seen in November 2021, she had largely normal psychiatric findings with guarded but engaged behavior; a flat but appropriate affect with depressed mood; normal attention with intact concentration; and normal thought content (7F3 [(AR 407)])." *Id.*

  o "During a March 2022 consultative examination, she was noted to have appropriate grooming and hygiene; she had appropriate behavior with good eye contact; and formal mental status testing suggested no more than minor concentration and memory deficits with the claimant found to be able to complete tasks such as following a three-step command; spelling world forward and backward; exhibit an intact fund of knowledge with full orientation (10F [(AR 452–57, Dr. Stamschror's opinion)])." *Id.*

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 16

- "When examined in November 2022, while she had an anxious and hopeless presentation, she was also fully oriented; she [was] not forgetful; and had normal thought content with non-pressured speech (12F3 [(AR 467)])." *Id.*

Being described as "cooperative" or "pleasant" by medical providers does not inherently disprove or undermine Benson's symptom testimony regarding social withdrawal and being easily overwhelmed in non-clinical settings. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (treatment notes discussing plaintiff's "good eye contact, organized and logical thought content, and focused attention" during therapy sessions did "not contradict [plaintiff's] reported symptoms of depression and social anxiety"). Furthermore, the record reflects persistent anxiety, depression, and cognitive issues spanning several years (between 2021–2023). *See* Dkt. No. 15 at 15 (citing AR 407, 444, 454, 466–67, 495, 512, 516, 526, 530, 539–40, 550, 554, 558, 562, 566, 570, 580, 584, 590, 596, 600, 608, 612). The ALJ's focus on "normal" moments ignores this pattern and—even though the Court does not find that the ALJ engaged in the cherry-picking that *Ghanim* prohibits—the decision does not do enough to reconcile the so-called "normal" or "mild" findings with the full diagnostic picture. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (occasional symptom-free periods must be weighed within the context of an "overall diagnostic picture").[3] Similarly, the ALJ's observations regarding Benson's allegedly inconsistent statements (i.e., that in November 2021 she reported that she stopped working before she had her youngest child, and in March 2022 she reported that she stopped working because of childcare quality concerns, AR 28) do not explain why those statements necessarily conflict, and do not explain the

---

[3] Here too, the Court notes that the record evidence not listed above is not necessarily inconsistent with the ALJ's position; again, some parts of the record suggest that Benson's mental impairments are not permanent, but her unwillingness to follow through with her providers' recommendations prevents improvement. *See, e.g.*, AR 404 (primary care provider noting that Benson's disability is temporary and expected to last "a year"); AR 410 (same); AR 461 (same); AR 539 (7/14/2022 mental health encounter stating that Benson "is always stressed but has difficulty making changes in her life and utilizing stress reduction techniques due to 'this is just how I am.'"); AR 538 ("The clinician encouraged [Benson] to have organized set places to keep her belongings so she knows where they are but [Benson] shared 'I'm scatterbrained and not that organized and that's just the way I am.'"); AR 570 (10/27/2022 mental health encounter noting that Benson is "unwilling[] to act in ways that overcome life challenges.").

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 17

import of those statements (for example, the Commissioner suggests that these statements demonstrate that Benson did not stop working due to disabling symptoms, Dkt. No. 19 at 6, but the ALJ does not expressly say so).[4]

For these reasons, the Court agrees with Benson that the ALJ's evaluation of her subjective symptom testimony was deficient.

**D.     The Court Remands for Additional Administrative Proceedings**

Benson asks this Court to remand this case for an immediate payment of benefits. Dkt. No. 15 at 1. The Commissioner disagrees and asks the Court to remand for additional proceedings, because "the record as a whole creates serious doubt as to whether Plaintiff is disabled within the meaning of the Social Security Act." Dkt. No. 19 at 13. For the reasons explained below, the Court agrees and remands this case for additional proceedings.

When the ALJ commits legal error in denying a claim for benefits, the district court "ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). The Social Security Act, however, grants district courts flexibility in certain circumstances to reverse the ALJ's decision and remand for an immediate award of benefits rather than further administrative proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014); *see* 28 U.S.C. § 405(g) (a district court may enter a judgment "affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing"). The Ninth Circuit has repeatedly made clear that remand for a benefits award is the "rare exception," not the rule. *Leon*, 880 F.3d at 1045; *see*

---

[4] The Court notes that the ALJ does not address other potentially inconsistent statements. *See, e.g.*, AR 465 ("Last time worked as a dental assistant in 2017, 'had a nervous breakdown' and stopped working."); AR 508 (noting that she worked in "2017 til my son was born"); AR 355 (back pain onset date was 12/11/17); AR 393 (on 12/18/2017 noted that she has had low back pain "since the childbirth 6 months ago"); AR 407 ("Per patient she is not able to work due to low back pain. On October 2020 she had a car accident, since then has had mid to low back pain[.]"); AR 465 ("She got in a MVA in 2020, since then has had low back pain").

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 18

*also Brown-Hunter*, 806 F.3d at 495 (remand for an immediate benefits award is an "extreme remedy"); *Treichler*, 775 F.3d at 1102 ("We have frequently exercised our discretion to remand for further proceedings, rather than for benefits.").

Remand for an immediate award of benefits is permitted only when three requirements (collectively referred to as the "credit-as-true" rule) are satisfied: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether that evidence is claimant testimony or a medical opinion; (2) there are no outstanding issues that must be resolved before a disability determination can be made, the record is fully developed, and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the record as a whole would require the ALJ to find the claimant disabled on remand. *Leon*, 880 F.3d at 1045; *Garrison*, 759 F.3d at 1020. And even when all of these elements are met, a district court is not required to remand for an immediate award of benefits, *Leon*, 880 F.3d at 1045; rather, "the decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion," *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) (citation modified); *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (although the district court "may exercise its discretion to remand the case for an award of benefits," the court "is generally not required to exercise such discretion").

Based on a review of the record, the Court concludes that Benson has not shown that the record is free from important and relevant conflicts, and issues remain that must be resolved concerning her functional capabilities and ability to perform other jobs existing in significant numbers in the national economy. And even though the Court finds that the ALJ erred, the inconsistencies raised between Benson's testimony and the broader record are "exactly the sort of issues that should be remanded to the agency for further proceedings." *Treichler*, 775 F.3d at 1105. Therefore, remand for further administrative proceedings is appropriate.

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 19

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings pursuant to 42 U.S.C. § 405(g). On remand, the ALJ must re-evaluate Benson's subjective symptom testimony; reassess her residual functional capacity; address whether Benson has followed the treatment prescribed by her medical sources, and if not, whether there was a good reason for this failure; obtain additional vocational expert testimony, if necessary; and determine whether there are jobs which Ms. Benson can perform that exist in significant numbers in the national economy.

DATED this 30th day of October, 2025.

Lauren King
United States District Judge